THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

U.S. COURTS
MAY 02 2019
Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

Ryan Isbelle )
*Plaintiff*, )
)
vs )  Case No. 1:19-cv-00093-CWD
)
Lawerence Denney )
*Defendant.* )
)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW the Plaintiff, Ryan Isbelle, who hereby submits his Response to Defendants' Motion to Dismiss and states as follows:

### I. STATEMENT OF FACTS IN DISPUTE

1.The Defendant is inaccurate when making the claim that initiative statute set by Idaho Code Section 34-1805 does not apply to the Plaintiff because the Plaintiff has not "filed any initiatives with the Idaho Secretary of State as required by Idaho law." (Memorandum In Support of Motion to Dismiss p.2).

2.Idaho SB 1108 (2013) altered the formula in which signatures are counted during the initiative process. The prior requirement of 6% of statewide registered voters' signatures counted every signature as 1 vote. The requirement set was an absolute number, meaning each vote moved the initiative petition an equal distance closer to the goal of ballot access. After the passage of SB 1108, the value of each signature gathered is in direct relation to the number of registered voters in their district. No signature, by itself, in the current initiative process is counted as an absolute number, meaning it affects all registered voters in Idaho, including the Plaintiff. (Idaho Code Section 34-1805).

3.The Defendant's motion wrongfully says that the complaint made by the Plaintiff "fails to state a claim as to how his right to participate in the initiative process has been damaged."

The complaint by the Plaintiff clearly states that due to the passage of SB 1108, the Defendant has "failed to protect [the Plaintiff's] right to equal protection under the 14th Amendment." (Complaint p.2)

4.Voting is a fundamental right subject to equal protection guarantees under the Fourteenth Amendment. See *Reynolds v. Sims*, 377 U.S. 533, 561-62, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) ("Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society."). The ballot initiative, like the election of public officials, is a " 'basic instrument of democratic government,' " *Cuyahoga Falls v. Buckeye Comm. Hope Found.*, 538 U.S. 188, 123 S.Ct. 1389, 1395, 155 L.Ed.2d 349 (2003) (quoting *Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 679, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976)), and is therefore subject to equal protection guarantees. Those guarantees furthermore apply to ballot access restrictions just as they do to elections themselves. See *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). Citing *Idaho Coal. United for Bears v. Cenarrusa*, 342 F.3d 1073, 1076 (9th Cir. 2003)

## II. STANDARD OF REVIEW

5.Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id. At 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. At 570.

6.The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". *Friends of Lake View School District v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009). While "mere labels and conclusions" will not satisfy a plaintiff's burden, there is no need for detailed factual allegation or specific facts that describe the evidence to be presented. Id. A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". *Ashcroft v. Iqbql*, 129 W.Ct. 1937, 1950 (2009).

7.Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556

### III. ARGUMENTS AND AUTHORITIES

8."When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the plaintiff." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Sir. 1996): *Jones v. General Elec. Co.*, 87 F.3d 209, 211 (7th Cir. 1996). "Only if no possible construction of the alleged facts will entitle plaintiff to relief should the court grant defendant's motion." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). If the factual allegations in plaintiff's complaint support any legal theory that entitles plaintiff to some relief, the court should overrule defendant's motion to dismiss.

9.The Motion to Dismiss from the Defendant cites *Angle V. Miller*, 673 F.3d 1122,1128-1129 (9th Cir. 2012) as a reason the Plaintiff "[L]acks standing to mount an as-applied challenge to the Idaho Code [Section] 34-1805." (Motion to Dismiss P.4). *Angle V. Miller* states, "Citing Idaho Coalition, we held that "an initiative qualification rule that requires a fixed percentage of petition signatures from a fixed percentage of counties in a state with a substantially <u>uneven geographic distribution pattern</u>, which favors residents of sparsely populated areas over residents of densely populated areas, violates the Equal Protection Clause." Lomax, 471 F.3d at 1020. <u>We applied strict scrutiny because the rule "dilute[d] the power of some votes by providing more sparsely populated counties with the same total power as densely populated counties</u>." Id" [Emphasis added].

10.*Angle V. Miller* determines, "All procedures used by a State as an integral part of the election process," however, "must pass muster against the charges of discrimination or of abridgment of the right to vote." Moore v. Ogilvie, 394 U.S. 814, 818 (1969). Thus, when a state chooses to give its citizens the right to enact laws by initiative, "it subjects itself to the requirements of the Equal Protection Clause." Idaho Coalition, 342 F.3d at 1077 n.7.

11.*Angle V. Miller* also states, "In sum, our case law establishes that <u>geographic distribution requirements assigning equal political power to districts of unequal population violate equal protection</u>. The All Districts Rule, however, avoids that defect. Whereas the rules in Moore, Idaho Coalition and Lomax afforded equal political power to counties having unequal populations, the All Districts Rule grants equal political power to <u>congressional districts having equal populations</u>. [Emphasis added]

12. The Plaintiff calls attention to the lists of Plaintiffs named in Idaho Coal. United for Bears v. Cenarrusa. Among the names of Plaintiffs is the Initiative and Referendum Institute, a not-for-profit corporation located at U.C. Berkeley in California who is defined as, " [A] group that seeks to further the rights of citizens to participate in the initiative process." If an out of state Not-for-profit corporation that is not even allowed to sign a ballot initiative petition has grounds to challenge Idaho Code 34-1805, the Plaintiff does too.

13. The same reasoning is applied when examining the Plaintiffs in the case Semple v. Williams (District Court of Colorado, 2018). Two different not-for-profit corporations are named: THE COALITION FOR COLORADO UNIVERSAL HEALTH CARE, a/k/a COOPERATE COLORADO and COLORADOCAREYES.

14. At the time of filing this response, Idaho's ballot initiative signature requirement in Idaho Code Section 34-1805 is determined by the Idaho registered voter numbers from November 2016. These numbers are publicly available on the Idaho Secretary of State's website. Under these requirements, the Plaintiff's own legislative district (leg. dist. 6) is designated that a minimum of 1,344 signatures from eligible electors be collected for the signatures of the district to be counted. This means the Plaintiff is dependant on 1,343 other eligible electors for whether or not the Plaintiff's vote is counted at all.

15. Making a direct comparison to the current requirements as they are applied to other legislative districts; legislative district 27 is required to collect 1,035 signatures. A difference of 27%. district 23 is required to collect 1,063 signatures. A difference of 20%. district 10 is required to collect 1,059 signatures. A difference of 21%. There are a total 8 legislative district in Idaho which are required to collect a number >10% fewer signatures in order to be counted as legislative district 6, the Plaintiff's district.

16. The Defendant cites *Bonneville County v Ysura*, 142 Idaho 464, 466-471, 129 P.3d 1213, 1215-1220 (2005). (Motion to Dismiss P.4). This case is not relevant to the Plaintiff's claim as the Bonneville case was about the Constitutionality of a legislative redistricting plan. The right to proportional representation in Idaho's Congress is completely separate from the fundamental right to vote. Even under scrutiny applied by the Bonneville case however, Idaho Code Section 34-1805 would still be held unconstitutional, as some legislative districts have registered voter populations with differences 80% or more. Dwarfing the 10% difference allowed when redistricting.

17. The Defendant Motion to Dismiss (p.2) alleges the Plaintiff, "[H]as not and cannot meet his burden to establish an actual or imminent constitutional injury in fact."

Stating that since the Plaintiff, "[H]as never actually filed any initiatives with the Idaho Secretary of State as required by Idaho law in order to have the initiative statutes apply to him."
Ballot access for initiatives is just as dependant on the participation of registered voters in Idaho, as it is dependant on circulators, if not more. Idaho Code Section 34-1805 requires a minimum of 6% of registered voters in Idaho to sign an initiative petition before it is granted ballot access. The Plaintiff disagrees as simply registering to vote in Idaho makes you a participant in Idaho's ballot initiative process, as you are then factored when determining the minimum number of signatures in your district and state.

18. A signature on a ballot initiative petition carries the same weight as a vote at the ballot box, except Idaho Code 34-1802 allows 18 months to collect signatures. Essentially creating an 18 month "election" for ballot initiative access.
This complaint falls within the 18 months of the 18 month circulation period of 2019-2020.

19. The Defendant confirmed in April 2019 that he cleared language of a minimum wage initiative by the group "Idahoans for a Fair Wage." Given that there are petitions in circulation, the Plaintiff is suffering current and actual harm in the form of vote dilution. Under Idaho Code Section 34-1805, the Plaintiff's right to an independent vote is denied. Unless 6% of registered voters' signatures are collected from the Plaintiff's district, the Plaintiff's vote will not be counted toward the goal of getting an initiative on the ballot, nor will it be recorded in any way.

20. The Plaintiff has been very public if their intent to participate in the initiative process. In March of 2019, the Lewiston Morning Tribune posted a letter to the Editor that the Plaintiff authored. The Plaintiff wrote, "I am a taxpaying, hard-working resident of Lewiston who is absolutely disgusted that while Clarkston finally reaches a half-decent wage of $12 hour this year, Lewiston is stuck with its poverty-inducing $7.25 per hour minimum. So I looked into contacting my city council or mayor about raising Lewiston's minimum wage. Too late. Republicans are all about big government now and decided to ban cities setting their own wage law in 2014, making our local representation powerless. So since Sen. Dan Johnson, and Reps. Mike Kingsley and Thyra Stevenson have no interest in actually representing their constituents, I'm thinking about raising signatures to put a minimum wage raise initiative on the ballot in 2020. Too late. Republicans have never actually cared about democracy, so they changed the ballot initiative requirements in 2013 from 6 percent of Idaho's registered voters to 6 percent in a majority in legislative districts in Idaho. I didn't realize we had such a problem with democracy run amok."

21. The Plaintiff has been in contact with their State Rep. Mike Kingsley and State Sen. Dan Johnson regarding their intent to assist Lewiston in getting their minimum wage raised. The Plaintiff has also contacted Idaho House Minority Leader Mat Erpelding and criticized him for allowing Republicans to add another geographic distribution clause to ballot initiative process, making it all but impossible for the people to act when their legislators won't.

22. Given that the Plaintiff has clear intention to further their goals using the ballot initiative process, it is easy to assess that the harm alleged in the complaint is imminent. Given that no initiative gets ballot access without applying the statues of 34-1805 to all registered voters, the harm alleged is concrete and particularized. Given that all other options of achieving the Plaintiffs goals are not possible, the Plaintiff is being harmed in a personal and individual way.

## IV. CONCLUSION

Plaintiff has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct." See *Ashcroft v. Iqbal*, 129 S.Ct. at 1950. Plaintiff's claims should therefore survive dismissal.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order denying Defendants' Motion to Dismiss for Failure to State a Claim and . In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant leave to amend his Complaint.

Respectfully Submitted,

___/S/ Ryan Isbelle_____

Ryan Isbelle
217 S. Garden Ct. #F
Lewiston, ID 83501
208-553-7951

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2019, a true and correct copy of the foregoing pleading was forwarded by (first class mail, hand-delivery, or certified mail) to Robert Arthur Berry, the attorney for Lawerence Denney (defendant) at the address of 700 W. Jefferson St. #210 Boise, ID. 83270

_____  4/30/19
Signature                         Date


Ryan Isbelle
217 S. Garden Ct. #F
Lewiston, ID 83501
208-553-7951