LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

ROBERT A. BERRY, ISB #7742
Deputy Attorney General
954 W. Jefferson Street, 2nd Floor
P. O. Box 83720
Boise, ID  83720-0010
Telephone:	(208) 334-2400
Facsimile:	(208) 854-8073
robert.berry@ag.idaho.gov
Attorney for Defendant Lawerence Denney

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RYAN ISBELLE,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>LAWERENCE DENNEY,<br><br>　　　　　　Defendant. | Case No. 1:19-cv-00093-CWD<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 2]** |

COMES NOW Defendant, Idaho Secretary of State Lawerence Denney, by and through undersigned counsel, and hereby submits this reply memorandum in support of his Rule 12(b)(1) and 12(b)(6) Motion to Dismiss.

### I.	INTRODUCTION

Contrary to Plaintiff's apparent belief, it is not enough to be a registered voter and to be interested in an initiative to have standing to challenge the laws governing Idaho's initiative process.  Plaintiff lacks standing to bring this challenge.

## II.     ARGUMENT

### A.     Plaintiff Lacks Standing.

As explained in Defendant's Memorandum in Support of Motion to Dismiss, Plaintiff must show that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual and imminent, not conjectural or hypothetical" as an essential element of standing.  *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

In his Complaint, Plaintiff alleges he has suffered injury as a result of Idaho Code § 34-1805's geographic distribution requirement for signatures on initiative petitions because it "damages my right to participate in the initiative process."  (Dkt. 1 at p. 2).  In response to Defendant's Motion to Dismiss, Plaintiff appears to clarify that his right to participate in the initiative process has been injured in two ways:  (1) he has actively supported the subject matter of a currently circulating initiative by way of a letter to the editor and contacts to state legislators and Idaho Code § 34-1805 applies to that initiative; and (2) he is a registered voter, there is an initiative petition currently circulating, and Idaho Code § 34-1805 applies to that initiative.  (*See* Dkt. 7, at ¶¶ 2, 17-22).  Either way, this is not enough to establish standing to bring the instant equal protection challenge to Idaho Code § 34-1805.

The U.S. Court of Appeals for the Eighth Circuit's decision in *Bernbeck v. Gale*, 829 F.3d 643 (8th Cir. 2016) is highly instructive.  The plaintiff in *Gale* alleged that he had suffered injury as a result of Nebraska's signature distribution requirement in two ways: as a petition sponsor and as a voter.

As a petition sponsor, he essentially alleged that he suffered injury in his ability to place an initiative petition on the ballot under the one-man-one-vote principle because "the signature-

distribution requirement 'dilutes, cheapens and debilitates a plaintiff's individual voice and vote as a petition circulator'—and nothing more." *Id.* at 649 n. 4.  The Eighth Circuit concluded that the plaintiff lacked standing as a petition sponsor or circulator because he "never submitted a signed petition." *Id.* at 647.  "The only sense in which [the plaintiff] can be said to have been injured, then, is imminently.  The district court found that [the plaintiff] was injured because '[h]e has a specific initiative he wishes to undertake at this time.'  We conclude that this wish, even if evidenced by a sworn statement and sample petition filed with [the Secretary of State], is insufficient to establish an imminent threat of enforcement." *Id.* at 647.  The Eighth Circuit continued, "[t]he only other plausible basis on which [the plaintiff] can claim to have been injured is in his interest as a resident of Omaha in parity between his petition signature and those of registered voters in other counties." *Id.* at 650.  As the plaintiff had not provided any averment or evidence that he was a registered voter, the court concluded he lacked standing to assert that interest as well. *Id.*  Thus, the *Gale* court effectively ruled a person needed to be (1) both a petition signer and registered voter or (2) a petition sponsor of a submitted petition to have suffered the necessary actual or imminent injury sufficient to confer standing.

  The Plaintiff here has not alleged any actual or imminent harm as a voter.  To allege equal protection injury as a voter in the context of initiatives, he must be both a registered voter and a petition signer per *Gale*.  But here Plaintiff has not alleged that he has signed an initiative petition, nor has he alleged specific, concrete plans to sign one.  Plaintiff essentially argues that he has suffered injury simply because he is a registered voter who has interest in a currently circulating initiative petition.  But it is well established that a plaintiff does not have standing "to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens."  *Hein v. Freedom from Religion Found., Inc.,* 551 U.S. 587, 598

REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 2] - 3

(2007) (quoting *ASARCO Inc. v. Kadish,* 490 U.S. 605, 613 (1989)). This is because "[t]he judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Id.* (citing *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.,* 454 U.S. 464, 471 (1982)).

Plaintiff also has not alleged any actual or imminent harm as a petition sponsor. Reading the allegations in the Response generously, and assuming for the purposes of this motion only that they are true, Plaintiff's only allegations on this front are that he has written a letter to the editor complaining of hurdles in addressing his minimum wage concerns, (Dkt. 7 at ¶ 20), contacted his Idaho State Representative and Senator regarding getting the minimum wage in Lewiston raised, (*id.* at ¶ 21) and contacted Idaho House Minority Leader Mat Erpelding to object to adding 'another' geographic distribution clause to the ballot initiative process. (*Id.*). Plaintiff never alleges any direct connection with an actual initiative petition. All that he has alleged is some ephemeral desire to support an initiative. His allegations are not enough to establish injury as a petition sponsor.

Courts have generally required that plaintiffs have a far closer relationship than the relationship Plaintiff here has alleged with an actual initiative petition to have standing to challenge laws that govern initiative petitions. *Compare Marijuana Policy Project v. Miller*, 578 F.Supp.2d 1290, 1301-1302 (D. Nevada 2008) (finding the plaintiffs had established injury in fact necessary to establish standing when they had circulated initiative petitions in the past, stated they intended to do so in the future, and had actually signed initiative petitions) *with People's Legislature v. Cegavske*, 2017 WL 2312357, at *3 (D. Nev. May 25, 2017) (finding the plaintiffs did not have standing because they had not actually filed a petition and it was not clear how the challenged statutes had prevented plaintiffs' intended conduct to file or circulate their petition) *and Weiss v.*

*Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 574 (E.D.N.Y. 2011) (holding the plaintiff who sought to challenge requirements to place a referendum on a ballot lacked standing to bring her claim as she failed to allege she had made any attempt to collect a sufficient number of signatures to petition for a referendum nor had she set forth any facts to prove that any efforts to petition for a referendum would inevitably have failed).

Plaintiff's remaining argument about the identities of other plaintiffs in two federal court cases, where standing was not analyzed, fail to support his standing. *See* Dkt. 7, at ¶¶ 12-13. Plaintiff identifies certain plaintiff organizations in *Idaho Coal. United For Bears v. Cenarrusa ("ICUB")*, 234 F. Supp. 2d 1159, 1165 (D. Idaho 2001), *aff'd,* 342 F.3d 1073 (9th Cir. 2003) and in *Semple v. Williams*, 290 F.Supp.3d 1187 (D. Colo. 2018) (on appeal) to support his claim for standing, but neither case is on point. The plaintiffs he identifies are Initiative and Referendum Institute and the Coalition for Colorado Universal Health Care a/k/a Cooperate Colorado and ColoradoCareYes.

In *ICUB*, the plaintiff Initiative and Referendum Institute was a group that sought to further the rights of citizens to participate in the initiative process. 234 F. Supp.2d at 1161. One of its members had sponsored successful initiatives in the past and was preparing a term limits initiative for the next year. *Id.* There was evidence before the court that members of the Initiative and Referendum Institute who lived outside of Idaho would like to circulate petitions in Idaho but were prevented from doing so by the very law they challenged. *Id.* Similarly, in *Semple*, the plaintiffs the Coalition for Colorado Universal Health Care a/k/a Cooperate Colorado and ColoradoCareYes were entities created to promote an unsuccessful initiative on the 2016 Colorado ballot. 290 F.Supp.3d at 1189. They intended to place a similar proposal on the Colorado ballot either in 2018 or 2020 and understood that the challenged law would make that a much more difficult and costly

effort. *Id.* In other words, the injuries these plaintiffs suffered or would imminently suffer as a result of the laws they challenged were far more actual and imminent than the hypothetical injuries Plaintiff asserts.

The attenuated relationship that Plaintiff has alleged with regard to his participation in the initiative process—being a registered voter, drafting letters to the editor and contacting State legislators—is insufficient to establish standing. His relationship to the law he seeks to challenge with this lawsuit is far more attenuated than that of plaintiffs who have been found to have standing to challenge initiative laws. Plaintiff's complaint should be dismissed for lack of standing.

B. **Plaintiff's arguments on the merits are irrelevant to Defendant's motion and lack merit.**

Plaintiff also argues the merits of his case in response to Defendants' motion. "[S]tanding is a jurisdictional issue, separate and distinct from the merits. . . ." *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). While Plaintiff's arguments are irrelevant to the issue of standing, it is worth noting that they are also without merit.

In 1997, the Idaho Legislature first added a geographic distribution requirement to Idaho Code § 34-1805. It amended that section of Idaho Code to reduce the total number of signatures required on an initiative petition from 10% to 6% of the qualified electors of the state and to require that the initiative petition be signed by 6% of the qualified electors in each of 22 counties. S.L. 1997, ch. 266, § 5. However, in the 2001 *ICUB* decision, the U.S. District Court for the District of Idaho held the geographic distribution requirement in then-Idaho Code § 34-1805 unconstitutional under the Equal Protection Clause of the U.S. Constitution. *ICUB*, 234 F. Supp. 2d at 1165. The court reasoned "[b]ecause over 60% of Idaho's population resides in just 9 of the State's 44 counties, it is easy to envision a situation where 3/4 of Idaho's voters sign a petition but

REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 2] - 6

fail to get it on the ballot because they could not collect 6% of the vote in the rural counties. This scheme effectively gives rural voters preferential treatment . . . ." *Id.*

In 2003, the U.S. Court of Appeals for the Ninth Circuit issued its decision affirming the court's decision. 342 F.3d 1073 (9th Cir. 2003). The Ninth Circuit concluded that requiring a certain percentage of signatures from 22 counties violated the Equal Protection Clause. "[I]n the smallest county a 'vote' may count where 61 others sign, whereas in the largest county it may require up to 18,054 other signatures before the individual's 'vote' will count." *Id.* at 1078. The court reasoned that the state may not treat unequal counties equally and make "the electoral determination dependent on the support of numbers of counties rather than numbers of people." *Id.* Far from prohibiting all geographic distribution requirements, the court concluded "Idaho could achieve [the end of requiring a modicum of statewide support] through a geographic distribution requirement that does not violate equal protection, for example, by basing any such requirement on *existing state legislative districts*." *Id.* (emphasis added).

In affirming the district court's decision, the Ninth Circuit distinguished the Eighth Circuit's decision in *Libertarian Party v. Bond*, 764 F.2d 538, 544 (8th Cir. 1985) and the U.S. District Court's decision in *Udall v. Bowen*, 419 F.Supp. 746. In *Bond*, the Eighth Circuit upheld against an equal protection challenge a requirement that signatures be obtained from a percentage of voters calculated based on the number of people who voted in the last gubernatorial race in each district in at least one-half of Missouri's nine congressional districts. 764 F.2d at 544. The court concluded that the geographic distribution requirement was permissible even where there was some variance in the number of signatures required from each congressional district due to the fact that congressional districts were created based on population, rather than the number of registered voters. *Id.* In *Udall*, the district court for the Southern District of Indiana upheld a statute

requiring a candidate for presidential primary obtain signatures of 500 registered voters from each of 11 congressional districts as a prerequisite to being placed on the ballot against an equal protection objection because the districts were "substantially equal in population." 419 F. Supp. at 749.

In 2012, the Ninth Circuit decided *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) upholding Nevada law requiring initiative proponents to meet a ten percent signature threshold in all of the state's congressional districts. The Ninth Circuit concluded that the geographic distribution requirement did not violate the Equal Protection Clause. *Id.* at 1128-1129. Thus, in 2013, when the Idaho Legislature instated the current geographic distribution using legislative districts, it was imposing a requirement already blessed by the Ninth Circuit Court of Appeals. *See* S.L. 2013, ch. 214, § 3, eff. July 1, 2013.

And the Idaho Supreme Court has already ruled and determined that Idaho's legislative districts were constitutionally apportioned under the federal constitution for the purposes of the one person, one vote principle for the purposes of redistricting when the maximum population deviation was less than ten percent of a population calculated by a ten-year census. *Bonneville County v. Ysursa*, 142 Idaho 464, 467-68, 129 P.3d 1213, 1216-17 (2005). If Idaho's legislative districts are constitutionally permissible under this principle for redistricting purposes, they must also be permissible for initiative petition purposes.

A geographic distribution requirement based on legislative districts for the purposes of initiative petition signature gathering does not violate the federal one person, one vote requirement. *See generally id.* Plaintiff's arguments do not change this reality. The Ninth Circuit's decisions in *ICUB* and *Angle* along with the Idaho Supreme Court's decision in *Bonneville County* establish that Plaintiff does not have a viable claim.

REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 2] - 8

### III. CONCLUSION

Plaintiff's complaint should be denied for lack of standing. Plaintiff's relationship to the initiative process is far too tangential to result in the kind of actual or imminent injury sufficient to challenge the provisions of I.C. § 34-1805. Plaintiff's complaint should be dismissed.

DATED this 16th day of May, 2019.

>STATE OF IDAHO
>OFFICE OF THE ATTORNEY GENERAL
>
>By:     */s/ Robert A. Berry*
>ROBERT A. BERRY
>Deputy Attorney General

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 16th day of May, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system,

    AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CMF/ECF Registered Participant in the manner indicated:

| Ryan Isbelle<br>217 S. Garden Ct., #F<br>Lewiston, ID 83501 | ☒ U.S. Mail<br>☐ Email<br>☐ Certified Mail, Return Receipt Requested<br>☐ Overnight Mail<br>☐ Facsimile |
|---|---|

By: _____*/s/ Robert A. Berry*_____
        Robert A. Berry
        Deputy Attorney General