LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

ROBERT A. BERRY, ISB #7742
Deputy Attorney General
954 W. Jefferson Street, 2nd Floor
P. O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-2400
Facsimile:     (208) 854-8073
robert.berry@ag.idaho.gov
Attorney for Defendant Lawerence Denney

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| RYAN ISBELLE, | ) |
| | ) Case No. 1:19-cv-00093-DCN |
| Plaintiff, | ) |
| | ) **REPLY BRIEF IN SUPPORT OF** |
| vs. | ) **MOTION TO DISMISS AMENDED** |
| | ) **COMPLAINT** |
| LAWERENCE DENNEY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

COMES NOW Defendant, Idaho Secretary of State Lawerence Denney, by and through

his counsel, Deputy Attorney General Robert A. Berry, and hereby files this reply brief in support

of his motion to dismiss the amended complaint in this matter.

**I.     INTRODUCTION**

Plaintiff seeks elimination of Idaho Code § 34-1805's geographic signature requirement of

six percent of the qualified electors from at least 18 legislative districts.  His claimed injury is that

his signature in the initiative process is less valuable than that of some qualified electors in other

Idaho legislative districts. However, the 9th Circuit has already condoned such geographic

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT – 1

requirements, and Supreme Court precedent in *Evenwel*, and the recent 10th Circuit case of *Semple*, provide additional support.  For these reasons, which are discussed in more detail below, Plaintiff's amended complaint should be dismissed with prejudice.

## II.   ARGUMENT

As a starting point, Plaintiff has not challenged the fact that Idaho has 35 legislative districts that are of equal population or that the Idaho Supreme Court has determined that its legislative districts are constitutionally appropriated for purposes of the one person, one vote principal, which is important, because the 9th Circuit has already condoned a geographic distribution requirement in Idaho if based upon existing state legislative districts.  *Idaho Coalition United for Bears v. Cenarussa*, 342 F.3d 1073, 1078 (9th Cir. 2003)("*ICUB*").  Rather, Plaintiff's challenge is because the number of registered voters in Idaho's 35 legislative districts appear to differ. (Dkt. 15, p. 1 ¶¶ 1-4.)

In the current matter, Plaintiff is challenging the legislature's geographic distribution requirement under Idaho Code § 34-1805.  He has not argued that the requirement is unreasonable or unworkable; rather, his argument is based upon the claim that his vote is valued less than votes in other legislative districts.  (Dkt. 15, p. 1 ¶¶ 1-4.)  His argument that petitioner signers are actual votes is irrelevant to the current analysis.[1]  While condemning a system based upon unequal counties, the 9th Circuit has already stated that a geographic distribution requirement would be allowed in Idaho:

---

[1] "A ballot access requirement determines whether there is a minimum level of grassroots support for an initiative to warrant its inclusion on the ballot. An election, by contrast, measures the collective, aggregate will of the electorate. These differences suggest that the bar on district-by-district counting apparently embodied in *Gray, Gordon* and *Reynolds* does not apply to the counting of petition signatures to qualify initiatives for the ballot." *Angle v. Miller*, 673 F.3d 1122, 1130 (2012)

As discussed above, we reject its argument that there is "a far more compelling interest in requiring a modicum of statewide support in the direct legislation context as opposed to the formation of a third party." Even if Idaho's argument were correct, however, the Idaho distributional requirement is not narrowly tailored to further any such interest. **Idaho could achieve the same end through a geographic distribution requirement that does not violate equal protection, for example, by basing any such requirement on existing state legislative districts**.

*ICUB*, 342 F.3d at 1078. (emphasis added)  Idaho further argued that "the geographic distribution requirement furthers other valuable purposes, including preventing a long and confusing list of initiatives from appearing on the ballot, protecting against fraud, informing the electorate, ensuring the integrity of the ballot process, and promoting 'grassroots direct legislation efforts.'"  *Id.* at 1079.  Rather than decry these reasons, the 9th Circuit further found that a geographic distribution requirement could work where it treated voters residing in different geographic areas equally, which the then system did not, unlike now.  *Id.*  Accordingly, *ICUB* supports the State's current geographic distribution requirement, because it is based upon existing state legislative districts.

Further, while Plaintiff repeatedly cites to *Reynolds v. Sims,* 377 U.S. 533 (1964) to support his case, *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) addressed *Reynolds* noting that "both the Supreme Court and this court have invalidated geographic distribution requirements that allocate equal political power to geographical units having unequal population."  *Id.* at 1129.  In *Angle*, the Ninth Circuit upheld an even more stringent Nevada law requiring initiative proponents to meet a ten-percent signature threshold in <u>all</u> of the state's congressional districts under a similar analytical structure in a First Amendment challenge brought under the U.S. Constitution.  The U.S. Supreme Court has stated when "a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the

State's important regulatory interests are generally sufficient to justify' the restrictions."[2] *Burdick v. Takushi*, 504 U.S. 428, 432 (1992).

In the context of ruling on the equal protection part of the claim, *Angle* noted that the all districts rule grants equal political power to congressional districts having equal populations, and thus is subject to "rational basis review because it serves the state's legitimate interest in ensuring a minimum of statewide support for an initiative as a prerequisite to placement on the ballot." *Angle*, 673 F.3d at 1129. *Angle* noted that "[a]lthough geographic distribution requirements are commonplace at the ballot access stage, we are not aware of any judicial decision invalidating them for this reason.  Our own cases, in fact, have presumed that geographic distribution requirements are permissible for signature collection, so long as they involve districts with equal populations." *Id.* at 1130-31.  *Angle* then held that a state is not prohibited from requiring petition signatures to be distributed among districts of equal population.  *Id.* at 1131.  In doing so, *Angle* again addressed *Reynolds*: "[t]hus, whatever limits *Gray, Gordon* and *Reynolds* may place on counting *votes* for a statewide initiative, we hold that they do not prohibit a state from requiring petition *signatures* to be distributed among districts of equal population." *Id.*

In the context of ruling on the First Amendment claim[3], one must first ask whether the law imposes a "severe burden" on plaintiff's rights.  *Angle*, 673 F.3d at 1132.  Laws imposing severe burdens must be narrowly tailored and advance a compelling state interest.  *Id.*  Lesser burdens . . . trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. *Id.*  The 9th Circuit concluded the

---

[2] The discrimination arguments made by Plaintiff appear to relate to the 6% classification. (Dkt. 15, p. 9, ¶¶ 50-53.)

[3] Defendant realizes plaintiff is not making a First Amendment challenge, but the reasoning and analysis is persuasive the facts of the instant matter.

signature requirements did not impose a severe burden on core political speech by making the process more expensive because there was no First Amendment right to qualify an initiative for the ballot and, the court held, there was no credible evidence that the All Districts Rule significantly inhibited the ability of proponents to place initiatives on the ballot. *Id.* at 1133-34. The Ninth Circuit upheld the law as a lesser burden because the state showed an important regulatory interest in requiring a modicum of state-wide support for changes to statewide law.   *Id.* at 1136.

In light of *Angle*, it is worth noting that aside from presenting a hypothetical math formula in his response on how many votes would allegedly be necessary to qualify a ballot initiative (Dkt. 15, p. 4-5, ¶¶ 23-27), Plaintiff has not shown how the current geographic distribution requirement inhibits the ability of proponents, let alone this particular plaintiff, to place any initiative on the ballot. Nevertheless, the example he uses, which appears to be mathematically implausible (48,793 votes to 467,202) is irrelevant to the existing law discussed above that allows for geographic distribution.   At most, all that Plaintiff has shown is that he has collected seven signatures, including his own, that he then submitted to the Secretary of State. (Dkt. 11, Ex. B-C.)  Plaintiff simply has not shown any significant inhibition in the ability to place an initiative on the ballot.

Plaintiff's other argument in comparing independent candidate signature requirements and signature requirements for ballot initiatives is an apples and oranges comparison.  In Idaho, the legislature has the power to establish the conditions and manner under which the people may exercise their right to initiate legislation.   *Dredge Mining Control—Yes! Inc. v. Cenarrusa* *("Dredge")*, 92 Idaho 480, 482, 455 P.2d 655 (1968); *Gibbons v. Cenarrusa*, 140 Idaho 316, 320, 92 P.3d 1063, 1067 (2002).  Accordingly, the legislature's differing requirements for signatures is

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT – 5

not relevant to whether the geographic distribution requirement for initiatives violates the 14th Amendment.

Finally, all that Plaintiff has argued for the most part to support his case derives from the dissent in *Semple*. (Dkt. 15, pp. 7-9.) Perhaps the most fatal problem to such reliance, is that the Tenth Circuit Court of Appeals denied a panel rehearing en banc:

> This matter is before the court on Appellees' Motion for Rehearing En Banc. We also have a response from the appellant. Upon consideration, a majority of the original panel members voted to deny panel rehearing. Judge Briscoe voted to grant panel rehearing sua sponte. In addition, the Motion for Rehearing En Banc and the response were circulated to all the judges of the court who are in regular active service and who are not disqualified. As no member of the panel and no judge in regular active service requested that the court be polled, the suggestion for en banc rehearing is denied.

*Id.*, Dkt. 18-1123, Order (10th Cir. Dec. 10, 2019). Accordingly, the 10th Circuit has spoken and agreed with the majority decision instead of the dissent, which demonstrates it is not persuasive and should not be followed in this matter. The majority's reasoning and decision should apply here as a result and the court should find that "Supreme Court precedent is clear. No equal protection problem exists if votes are cast in equally populated legislative districts that were drawn based on Census population data." *Id.* at 1141. The Court should further find that "[j]ust as it is not unconstitutional to apportion seats in a state legislature based on districts of equal total population, it is not unconstitutional to base direct democracy signature requirements on total population." *Id.*

For that matter, the Supreme Court has also spoken on the use of total population and observed that "all 50 States and countless local jurisdictions" use total population when drawing legislative boundaries. *Evenwel v. Abbott*, 136 S. Ct. 1120, 1132 (2016.)[4] Using total population

---

[4] Plaintiff does not distinguish *Evenwel* except as the dissent states in *Semple*.

helps ensure that elected representatives "serve all residents, not just those eligible or registered to vote." *Id.* It promotes "equitable and effective representation" by rendering each representative subject to requests and suggestions from the same number of constituents. *Id.* And again, *Evenwel* addressed *Reynolds* and other cases to explain that using total population "serves *both* the State's interest in preventing vote dilution *and* its interest in ensuring equality of representation." *Id.* at 1131(emphasis in original) (discussing *Reynolds v. Sims*, 377 U.S. 533 (1964)). Accordingly, the Court concluded that longstanding practice also supports using total population when drawing legislative districts. *Id.* By contrast, using voter population has "no mooring" in the Equal Protection Clause. *Id.*[5]

In summary, the geographic distribution requirement found in Idaho Code § 34-1805 is reasonable and a permissible condition to seek input not just from several of the most populous cities in Idaho, but throughout the state of Idaho generally. Indeed, the outcome Plaintiff seeks would decrease the participation of the 35 legislative districts as initiative signature gatherers would focus their efforts on the most populous areas in the state, thereby depriving less populous locales of a say on potential initiatives. As previously stated, federal courts that have examined the issue have "uniformly upheld geographic distribution requirements for signature collection when they have been based on equipopulous districts." *Angle v. Miller*, 673 F.3d 1122, 1131 (9th Cir. 2012). Again, if Idaho's legislative districts are constitutionally permissible under the federal one person, one vote principle for redistricting purposes, then based upon *Evenwel*, *Semple, ICUB,* and *Angle*, they must also be permissible under this same principle for initiative petition purposes.

---

[5] Even Plaintiff's own documents that he submits in support show the fluid and moving nature of registered voter population. The list he shows from 2019 deviates from that he submitted for 2016.

### III.   CONCLUSION

Plaintiff's claim fails as a matter of law, and accordingly, this matter should be dismissed with prejudice.


DATED this 23rd day of January, 2020.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By:_____*/s/ Robert A. Berry*_____
ROBERT A. BERRY
Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system,

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CMF/ECF Registered Participant in the manner indicated:

Ryan Isbelle                              ☒ U.S. Mail
217 S. Garden Ct., #F                     ☐ Email
Lewiston, ID 83501                        ☐ Certified Mail, Return Receipt Requested
                                          ☐ Overnight Mail
                                          ☐ Facsimile


By: _____ */s/ Robert A. Berry* _____
        Robert A. Berry
        Deputy Attorney General