UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

RYAN ISBELLE,

Plaintiff,

v.

LAWRENCE DENNEY,

Defendant.

Case No. 1:19-cv-00093-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Pending before the Court is Defendant Lawrence Denney's Motion to Dismiss (Dkt.14) Plaintiff Ryan Isbelle's Amended Complaint (Dkt. 11). Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Motion.

## II. BACKGROUND

Isbelle is an Idaho citizen residing in Lewiston, Idaho. Isbelle claims Idaho Secretary of State Lawerence Denney failed to protect his right to Equal Protection under the Fourteenth Amendment as it relates to voter initiative petitions in Idaho.

Denney was Secretary of State in 2013 when the Idaho Legislature passed an

amendment to Idaho Code Section 34-1805 ("Section 34-1805"). Section 34-1805 regulates the number of signers required for ballot initiatives or referendums. The amendment passed in 2013 requires that anyone who wishes to have an initiative placed on the ballot must obtain signatures of legal voters equal in number to at least six percent (6%) of the qualified electors at the time of the last general election in at least eighteen (18) of Idaho's thirty-five (35) legislative districts. Isbelle alleges this requirement "creates a preferred class of voters who are given obscenely more authority over the ballot initiative process than others." Dkt. 15.

On March 19, 2019, Isbelle brought suit against Denney seeking invalidation of the geographic distribution requirement of Section 34-1805. Dkt. 1. On April 9, 2019, Denney filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Dkt. 2. The Court granted Denney's Motion and dismissed Isbelle's previous complaint (Dkt. 1) for failure to sufficiently allege an injury in fact—a necessary requirement for standing. Dkt. 10. The Court, however, allowed Isabelle an opportunity to amend his complaint. *Id*. Isbelle filed his Amended Complaint on November 25, 2019. Dkt. 11. Denney subsequently filed a second Motion to Dismiss on December 20, 2019. Dkt. 14.

The Court notes that Denney does not contend Isbelle lacks standing in the instant motion (as he had originally argued), but premises the current motion to dismiss on Federal Rule of Civil Procedure 12(b)(6), alleging Isbelle has failed to state a claim upon which

relief can be granted.

The Court notes that it appears following the Court's prior decision, Isbelle circulated a petition regarding Idaho's minimum wage law. Dkt. 11, at 7. Isbelle has also provided evidence that he is a registered voter. Dkt. 11, at 6. Accordingly, it does appear Isbelle has standing to bring this action.[1]

## III. LEGAL STANDARD

As previously stated in this Court's Memorandum Decision and Order (Dkt. 10), a motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "A complaint generally must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal under a Rule 12(b)(6) motion." *Id*. (citing *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To sufficiently state a claim for relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations;" however, the "[f]actual allegations must be

---

[1] Additionally, even though Isbelle still uses some first-person language in his amended complaint, it appears he is mounting a facial challenge to the statute as a whole. *See* Dkt. 11, at 5 ("The Plaintiff in this case seeks the remedy of having the geographic distribution clause of Idaho Code 34-1805 added by the passage of SB 1108 (2013) invalidated by the court.").

enough to raise a right to relief above the speculative level." *Id*. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In light of *Twombly* and *Iqbal*, the Ninth Circuit summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the pleading under attack. *Iqbal*, 556 U.S. at 663. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after Iqbal and Twombly, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v.*

*Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

**IV. DISCUSSION**

"Constitutional challenges to specific provisions of a State's election laws . . . cannot be resolved by any 'limus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Each case must be evaluated on its own merits.

Isbelle's theory in this case is that "[b]efore the passage of SB 1108 (2013), the minimum signature requirement for ballot initiative petitions to gain ballot access was an absolute number and each signature submitted moved the initiative petition an equal distance closer to the requirement." Dkt 11. Under the new law, however—requiring 6% of Idaho's registered voters in at least 18 legislative districts—the minimum signature requirement is an indiscriminate number because, as Isabelle, states "[a]fter legislative District 6 has submitted 1,344 qualified signatures for a ballot initiative petition, any additional qualified signature[s] gathered from that district has absolutely no effect on that ballot initiative petition gaining ballot access if 17 other districts do not also meet their 6% requirement." Dkt. 15. This in turn leaves "every registered voter in the 94% remaining in the district who have not yet signed [having] their signature reduced to 0." *Id.*

Isbelle asserts that Section 34-1805 violates the Equal Protection Clause. The Court disagrees. While the matter has not been litigated extensively, there are numerous cases on point that address this question and ultimately lead the Court to conclude that Isablle *does not* have a redressable cause of action.

Section 34-1805 outlines, in relevant part, that:

> Before such petitions shall be entitled to final filing and consideration by the secretary of state there shall be affixed thereto the signatures of legal voters equal in number to not less than six percent (6%) of the qualified electors at the time of the last general election in each of at least eighteen (18) legislative districts; provided however, the total number of signatures shall be equal to or greater than six percent (6%) of the qualified electors of the state at the time of the last general election.

Isbelle claims this type of percentage requirement within legislative districts violates the "one-person, one-vote" principle that is fundamental to American voting and equality.

The Court begins its analysis broadly. In 2016, the United States Supreme Court confirmed the constitutionality of the total-population approach to legislative districting used by many states. *See Evenwel v. Abbott*, 136 S. Ct. 1120 (2016). In *Evenwel*, voters in Texas state senate districts with disproportionately large eligible and registered voter populations alleged that Texas' decision to base its apportionment on total population diluted their votes in relation to voters in other state senate districts, violating the Equal Protection Clause. *Id.* at 1125. They claimed that Texas should draw its state senate districts based on *voter* population, not *total* population. *Id.* The Supreme Court rejected this argument, holding that constitutional history, the Court's prior decisions, and longstanding practice all confirm that a State may properly draw its legislative districts based on total population. *Id.* at 1126–33. Said differently, the Supreme Court determined that a State *does not* violate the one-person, one-vote principle when it equalizes its state legislative

districts using total population rather than voter-eligible population.[2]

And while *Evenwell* dealt with voter-rights, the same principle applies to geographic distribution requirements for signature-gathering as well. As the Ninth Circuit explained in *Angle v. Miller*, "[o]ur own cases, in fact, have presumed that geographic distribution requirements are permissible for signature collection, so long as they involve districts with equal populations." 673 F.3d 1122, 1131 (9th Cir. 2012). Drawing on caselaw available at the time, the *Angle* Court noted that, by all accounts "it appears that courts that have addressed the issue have uniformly upheld geographic distribution requirements for signature collection when they have been based on equipopulous districts. *Id.*

The facts in *Angle* are strikingly similar to those presented here. The State of Nevada had a law requiring ballot initiative proponents to obtain signatures from ten percent of registered voters in each of the State's congressional districts. 673 F.3d at 1127–32. The Ninth Circuit explained that Nevada's law was constitutional because it "grant[ed] equal political power to congressional districts having *equal* populations." *Id.* at 1129 (emphasis in original). Determining that a geographic distribution requirement (such as Nevada's) was subject only to rational basis review, the Ninth Circuit noted that Nevada satisfied that standard because it had a "legitimate interest in ensuring a minimum of statewide support for an initiative as a prerequisite to placement on the ballot." *Id.* The distribution

---

[2] Relevant here, the Idaho Supreme Court has previously ruled that Idaho's legislative districts are constitutionally apportioned. *See Bonneville County v. Ysursa*, 129 P.3d 1213, 1216-17 (2005).

requirement, as enacted, guaranteed that a "proposal has support statewide, not just among the citizens of the state's most populous region." *Id.* at 1135.

One of the cases the Ninth Circuit referred to in *Angle* when explaining that its "own cases" supported geographic distribution requirements for signature gathering came from this District—the District of Idaho—and plays a critical role in the Court's analysis today.

In *Idaho Coalition United for Bears v. Cenarrusa* ("*ICUB*"), the Ninth Circuit upheld Judge B. Lynn Winmill's ruling that Idaho Code Section 34-1805 (as written at that time) violated the Equal Protection Clause because it required signatures from six percent (6%) of qualified voters in at least half of the state's *counties* in order to be placed on the ballot. 342 F.3d 1073, 1074 (9th Cir. 2003). Because the populations of Idaho's 35 counties varies widely from county to county, the Ninth Circuit found that such a geographic distribution requirement violated the Equal Protection Clause as it disproportionally favored some counties over others. *Id.*

Critically, however, the Circuit noted that a geographic distribution scheme based on equipopulous legislative districts (rather than counties) would be permissible. The *ICUB* Court suggested that "Idaho could achieve the same end through a geographic distribution requirement that does not violate equal protection, for example, *by basing any such requirement on existing state legislative districts*." *Id.* at 1078 (emphasis added). Thus, it appears Idaho did exactly what the Ninth Circuit suggested it do in *ICUB* by amending Section 34-1805 to base the signature percentage requirement on legislative districts rather than counties.

While Isbelle calls into question many of Denney's arguments, his bases for doing so is based heavily on a dissenting opinion in *Semple v. Griswold*, 934 F.3d 1134, 1136-42 (10th Cir. 2019). The Court will not engage in a lengthy analysis of Isbelle's various arguments for two reasons. First, *Semple* is an out-of-circuit opinion, and as such, is not binding on the court. Second, and more importantly, while the dissent in *Semple* brings up some interesting points, the majority opinion *supports* the Court's conclusion here today.

In *Semple*, the Tenth Circuit held that a Colorado statute requiring voters to collect two percent of the registered voters in each of Colorado's 35 state senate districts for a ballot initiative *did not* violate the Equal Protection clause of the Fourteenth Amendment. Citing *Evenwell,* the *Semple* Court concluded that "Supreme Court precedent is clear. No equal protection problem exists if votes are cast in equally populated state legislative districts that were drawn based on Census population data." *Id.* at 1141. Thus, while the dissent may support Isbelle's position, the majority in *Semple* agrees with the Ninth Circuit and confirms that Section 34-1805 is constitutional. [3]

In sum, the arguments Isbelle raises in this case have been brought by others and rejected—in the Ninth Circuit as well as in other Circuits across the Country. The Court see nothing in Isbelle's case here that warrants deviation from the principles outlined in

---

[3] Another argument Isbelle makes relies on *Reynolds v. Sims*, 773 U.S. 533 (1964) and the proposition that voters cannot be classified based on where they live. The *Angle* Court, however, specifically addressed *Reynolds* by noting that "whatever limits *Gray, Gordon* and *Reynolds* may place on counting *votes* for a statewide initiative, we hold that they do not prohibit a state from requiring petition *signatures* to be distributed among districts of equal population." 673 F.3d at 1131 (emphasis in original). Ultimately, collecting and counting signatures for an initiative is distinct from counting final votes on a balloted initiative.

*Evenwell* and *ICUB*—both of which are directly on point—and foreclose his challenge today.

## IV. CONCLUSION

Isbelle is correct: voting is a sacred trust and each person's voice, vote, and opinion should count. Section 34-1805 strives to honor that by ensuring that any initiative placed on the ballot in Idaho is supported by Idahoans across the state. Yes, to a certain degree, some signatures may not "count" in ultimately getting an initiative on the ballot,[4] but such a model does not violate a citizen's constitutional rights, nor does it violate principles of fairness in voting. In fact, were the Court to strike down Section 34-1805, it would likely mean that those who wanted to place initiatives on the ballot would focus solely on the most populous areas of the state (to increase the chances of garnering the greatest number of total signatures) and leave less populous areas with little to no input on important issues. Idaho Code 34-1805 ensures that ballot initiatives brought in Idaho enjoy broad support—not in the magnitude of the number of signatures, but in the breadth of where those signatures come from.

The geographic distribution requirement found in Idaho Code Section 34-1805 is permissible under Supreme Court and Ninth Circuit precedent and does not violate the

---

[4] As Isbelle suggests, if an initiative has already received the necessary percentage of signatures in a given district, any signatures over that goal (in that district) do not move the initiative any closer to being placed on the ballot; signatures from other districts are still required. Again, however, this serves the fundamental purpose of protecting the rights or all citizens in Idaho, and was (in part) the subject of the prior *ICUB* lawsuit.

Equal Protection Clause. As a result, Isbelle's claims fail as a matter of law and must be dismissed.

## V. ORDER

1. Denney's Motion to Dismiss (Dkt. 11) is GRANTED.
2. Isbelle's Complaint is DISMISSED WITH PREJUDICE.[5]
3. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.
4. This case is CLOSED.

DATED: June 1, 2020

David C. Nye
Chief U.S. District Court Judge

[5] Because the Court has already afforded Isbelle an opportunity to amend his complaint (Dkt. 10) the Court will not allow further amendments.